IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MATTHEW HESS**,

    Plaintiff,

vs.                                                                        CIV 08-0466 MCA/KBM

**The CITY OF CLOVIS, a Municipality
existing under the laws of the State of
New Mexico, and DAN BLAIR, in his
official capacity as City of Clovis Police
Chief, and individually**,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING PARTIAL SUMMARY JUDGMENT
AND REMANDING CASE**

    THIS MATTER comes before the Court on the City of Clovis's and Clovis Chief of Police Dan Blair's [hereinafter collectively referred to as "the City"] *Motion for Summary Judgment on Qualified Immunity and on Claim for Breach of Contract*, filed August 29, 2008 (Doc. 19).  The Court, having considered the parties' briefs, the record, and the relevant law, and otherwise being fully advised in the premises, concludes that the motion should be GRANTED in part and DENIED in part; that judgment should be granted in favor of the City on Matthew Hess's federal claim for violation of 42 U.S.C. § 1983; and that the state-law claim for breach of contract should be REMANDED to state court for resolution.

**I.      BACKGROUND**

    The following facts are undisputed[1].  Hess began working at the Clovis Police Department as a non-certified police-officer "recruit" on August 14, 2006.  Doc. 26, Ex. 1, at 2; Doc. 26, Ex. 5.

---

[1] The Court has not considered any evidence that could be characterized as inadmissible hearsay.

A New Mexico state statute provides that "a person employed as a police officer by any law enforcement agency in this state shall forfeit his position unless, no later than twelve months after beginning his employment as a police officer, the person satisfies the qualifications for certification set forth in Subsection A of this section and is awarded a certificate attesting to that fact." N.M.S.A. 1978, § 29-7-6(B).  To obtain state certification, an applicant must show, among other things, that he or she "has previously been awarded a certificate of completion by the director attesting to the applicant's completion of an approved law enforcement training program." N.M.S.A. 1978, § 29-7-6(A)(9).  Accordingly, when Hess was hired, he signed a "Letter of Understanding for Conditional Offer of Employment" ("LOU") providing that, as part of his "initial training process," and as a "condition of [his] employment," his employment as a police officer with the City required, in part, "[s]uccessful completion of New Mexico State Academy Requirements" and to "[s]uccessfully obtain state certification" as a police officer[2]. Doc. 20, Ex. A-1.  By signing the LOU, Hess agreed that he understood that he had to "pass" both requirements (among others) "to be qualified for employment" and that, if he was "unsuccessful in satisfying the requirements necessary for employment, this offer of employment [would] be rescinded." *Id.*

At the time he was hired, Hess states he was specifically told he "would be on probation for one year pursuant to the then existing City of Clovis written Personnel Policy," and that he was given a copy of the City's personnel manual.  Doc. 26, Ex. 1 at 2.  In the section of the manual

---

[2] In the same breath Hess contends that he "has successfully completed the requirements of the 'Letter of Understanding for Conditional Offer of Employment' and was close to finishing the Police Academy at the time he was fired." Doc. 26 at 1-2.  But because completing the requirements of the LOU required also successfully completing the Academy training and receiving state certification, and Hess admits that he did not accomplish either goal because he was terminated first, there is no genuine issue of material fact that Hess did not successfully complete the requirements of the LOU.

2

defining "Employment Positions," the manual defined "Initial Probationary" as "[a] new hire, selected to a regular position that has not completed the initial probationary period of 6 months. One year, for Police and Fire Personnel." Doc. 26, Ex. 1 at 3. In this same section, a "Regular, full time" employee is defined as: "An employee who works 40 hours or more per week and has successfully completed any applicable probationary period." *Id.* In a different section entitled "Initial Probationary Status," the manual stated:

> All new employees will serve a six-month initial, probationary period. ***Certified*** Police and Fire Personnel will serve a one-year initial probationary period. All employees on initial, probationary status will be considered at-will commencing with their first day of employment and can be dismissed with or without cause by the City.

*Id.* at 4 (emphasis added). In the same section, the manual stated: "*An initial probationary employee is not entitled to Grievance Procedures as outlined in these Personnel rules and regulations.*" *Id.* (italics in original). In the section entitled "Dismissal During Initial Probation," the manual provides: "At any time during an initial probationary period, an employee may be dismissed with or without cause. . . . An employee dismissed during initial probation may not request a hearing before the Employee Grievance Board . . . ." *Id.* at 9. Once an employee completed the probationary period and became a "Regular Employee," however, the employee became entitled to certain pre and post-termination proceedings and for dismissal only for cause. *See id.* at 6.

Hess provided a copy of a "Memorandum of Understanding" signed on January 28 and 29, 2008 by the Clovis Police Officers Association and the City of Clovis that states:

> Non-certified officers that were hired between May 20, 2006 and August 24, 2007 are on the twelve-month probationary period and are eligible for CPOA membership and pay increases after satisfactory completion of the 12-month probation.

Doc. 26, Ex. 6.

3

Another section of the personnel manual provided for a one-time "Extension of [the] Initial Probationary Period." Under this section. the City Manager could authorize an employee's initial probationary period to be extended, the employee would be given periodic written performance reviews, and the employee would "receive written documentation (prior to the commencement of the extension of this time), advising him/her that upon final performance review, the employee will either be terminated or placed on regular status. When probation is extended, vacation and sick leave usage is permitted." *Id.* at 4.

Hess was scheduled to begin his training at the Police Academy located at the junior college in Hobbs, New Mexico in January 2007, but a health issue almost immediately interrupted that training. The next 22-week training class did not begin until July 2007, however, and would not end until December 2007, which was outside the one-year mandatory statutory limit for completing police-officer certification. But the City did not rescind Hess's offer of employment or terminate his employment at the end of the one-year period, choosing instead to allow Hess to attend the July 2007 Police Academy session. Hess contends, and the Court accepts his contention as true for purposes of resolving this summary-judgment motion, that one of his superiors told him, in response to his question regarding "what would happen to [Hess's] status as a police officer if [he] did not complete the Police Academy" before the one year was up that the City "would just 'fire' [him] for a day, and then re-hire [him] again starting [anew] the year time period in which to become a certified police officer." Doc. 26, Ex. 1 at 3.

It is undisputed that Hess was formally reprimanded by Police Academy Assistant Director Paul Campos for what Campos perceived as exercising bad judgment during his first week at the Academy. *See* Doc. 20, Ex. A-2. On October 1, and again on October 18, 2007, Campos sent written reports to the City's police department stating that Hess was being informally counseled for

4

what Campos perceived as "negative," "lackadaisical," and "half-hearted" efforts, of allegedly uncooperative and "detrimental" behavior towards another Clovis police-officer recruit, and of allegedly "alienating" himself from the rest of the class and causing a "deep division" among class members. *Id.* at Ex. A-3, Ex. A-4. Campos stated on October 18 that Hess had been given a final opportunity to change his behavior or he "would be sent home." *Id.* Ex. A-4 at 2. Although he does not dispute that Campos sent these reports to the Clovis Police Department, Hess contends that Campos' reports and statements are not entirely truthful or accurate and that Campos did not tell him he was sending the October reports to Clovis. *See* Doc. 26, Ex. 1 at 4-6. Hess contends that another Clovis recruit saw a recruitment brochure from the Wyoming Highway Patrol in Hess's room at the Police Academy and that one of Hess's superiors at the Clovis Police Department told him on October 19, after questioning him about his trouble at the Academy, that he had been told that Hess had applied for a job in Wyoming. *See id.* at 7. Hess denied the accusation but said that, while he may be interested in relocating to Wyoming in the future, his family was settled in Clovis and when he was hired, he had orally promised Chief Blair to stay in Clovis for at least two years. *Id.* at 7-8.

About an hour later, Chief Blair called Hess into his office and told him that he was terminated, but that he would give Hess an opportunity to resign, which Hess refused to do. Hess did not receive a pre or post-termination hearing or an opportunity to grieve his termination because the City's position was that he was still an "at-will" employee who was not eligible for those procedures. *See id.* at 8; Doc. 26, Ex. 5 at 2. Although Hess had been academically successful and had passed 14 of the 17 "blocks" of Academy training at the time of his termination, the Academy would not allow Hess to complete his training because the City had terminated his employment. Doc. 26, Ex. 1 at 2-3.

Hess filed suit in state court for breach of his employment contract, and he also brought a

5

claim under 42 U.S.C. § 1983, contending that the City's failure to give him a pre and post-termination hearings violated his federal constitutional right to procedural due process.  *See* Doc. 1, Ex. A.  The City timely removed the case to federal court.  *See* Doc. 1.  The City moved for summary judgment on Hess's § 1983 claim on the basis of qualified immunity and contends that it also is entitled to summary judgment on the state-law breach-of-contract claim.

## II.   ANALYSIS

### A.  Applicable Legal Standards

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c) (2008 Rev. Ed.); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Once the moving party makes a proper summary-judgment challenge, the "opposing party may not rely merely on allegations or denials in its own pleading; rather its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  FED. R. CIV. P. 56(e)(2); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> "In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999). Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). . . . . If the court concludes no constitutional right has been violated, no further inquiry is necessary and the defendant is entitled to qualified immunity. *Id.*

*Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007).  The United States Supreme Court has

recently held that, "while the sequence [for analyzing a plaintiff's two-part burden] set forth [in *Saucier v. Katz*, 533 U.S. 194, 201 (2001)] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, ___ U.S. ___, ___, 129 S. Ct. 808, 816 (2009).

In reviewing the summary-judgment record, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Reeves*, 484 F.2d at 1250.

> "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). When a State seeks to terminate a protected property interest, the right to notice and opportunity for a hearing is usually paramount. *Id.* at 569-70, 570 n. 7, 92 S. Ct. 2701. Although these demands of due process are often relatively clear, the question of whether an employee has a protected interest in employment is less so. The Supreme Court has stated that property interests are not created by the Constitution, but by existing rules or understandings that stem from independent sources, "such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S. Ct. 2701.
>
> To create a property interest, the state-law rule or understanding must give the recipient "a legitimate claim of entitlement to [the benefit]." *Id.* For example, an employee may possess a property interest in public employment if she has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent. *See id.* at 576-77, 92 S. Ct. 2701; *Bishop v. Wood*, 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976); *Greene v. Barrett*, 174 F.3d 1136, 1140-41 (10th Cir. 1999).

*Darr v. Town of Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007). Thus, a plaintiff can show he had a constitutionally protected property interest in his employment only if he can show that "he has a legitimate claim of entitlement to continued employment." *Dickeson v. Quarberg,* 844 F.2d 1435, 1437 (10th Cir. 1988) (internal quotation marks omitted).

**B.	§ 1983 Claim**

Here, it is undisputed that Hess's offer of employment as a police officer was expressly conditioned upon his successful completion of the 22-week Police Academy and receipt of state certification as a police officer and that, at the time of his termination, he had not satisfied either requirement. It is further undisputed that, under state law, Hess was required to "forfeit his position" as a non-certified police officer in August 2007 because he had not completed his Academy training or received his state certification within one year from being hired as a non-certified police officer. Although his failure to complete the Academy training resulted from his termination, under the circumstances in which Hess still was not "qualified for [continuing] employment" as a police officer at the time of his termination, under state law Hess had no "legitimate claim of entitlement to continued employment" as a police officer in October 2007 and, therefore, no *constitutionally* protected interest in his state employment that mandated pre and post-termination procedures. Because Hess cannot show that the City violated his constitutional rights by terminating him without engaging in pre and post termination procedures, the Court will grant summary judgment in favor of the City on the § 1983 claim.

**C. Breach-of-contract Claims**

But although Hess cannot establish a *constitutionally protected* interest in continued employment as a Clovis police officer as a matter of law because state law required Hess to forfeit his position as a police officer for having failed to become certified within one year of hire, that does not mean, as the City suggests, that the City is also automatically entitled to summary judgment on Hess's breach-of-contract claims based on the "same legal principles and undisputed facts," Doc. 20 at 2. Just as an individual may still have state-law tort remedies in cases in which a tort does not rise to the level of a constitutional violation, *see Daniels v. Williams*, 474 U.S. 327, 330-36 (1986)

8

(noting that the federal Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society;" stating "[t]hat injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests;" and holding that, because negligent acts will not support a constitutional violation, "[w]hatever other provisions of state law or general jurisprudence he may rightly invoke, the Fourteenth Amendment to the United States Constitution does not afford him a remedy"), Hess still may have remedies for a breach of an employment contract even if he has not established a constitutionally protected interest in his employment as a police officer.

It is undisputed that Hess had a written, conditional offer of employment as a police officer. There are genuine issues of material fact regarding whether the City reasonably prevented Hess from complying with the terms of his conditional offer of employment by terminating him before he was able to complete the last two steps in his state-certification process in light of Hess's evidence that he had successfully completed every other step under his contract and had received positive evaluations. *See Sanders v. FedEx Ground Package Sys., Inc.*, 144 N.M. 449, 188 P.3d 1200 ( 2008) (detailing how the covenant of good faith and fair dealing applies to New Mexico contracts in regard to the parties' reasonable expectations). Further, Hess contends that, by virtue of the facts that the City (I) did not terminate him for not completing his state police certification within one year, (ii) employed him for more than one year, and (iii) told him he would be on probation for only one year, and (iv) the personnel manual states, in one place, "One year, for Police and Fire Personnel" for initial probationary status, he had an implied contract arising from the City's personnel manual that prohibited the City from terminating him except for cause after he had been employed for more than one year. "Under New Mexico law, a personnel manual gives rise to an implied contract if it

9

controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined." *Cockrell v. Bd. of Regents*, 132 N.M. 156, 166, 45 P.3d 876, 887 (2002) (internal quotation marks omitted); *Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct. App. 1995) ("[A]n employer's representations which give rise to a reasonable expectation that employees will be terminated only for good cause may create an implied contract."). Whether Hess was could be terminated only for cause after the City allowed him to remain employed for more than one year as a non-certified police officer depends on whether the provisions in the personnel manual regarding probationary and regular employees apply to non-certified, conditional police officers like Hess, and, if so, whether his probationary period was for one year or for eighteen months, and there are genuine issues of material fact regarding those questions. In short, the City has not met its burden to show that it is entitled to summary judgment on Hess's state-law breach-of-contract claims.

### D. Remand

Discovery in this case has been stayed pending resolution of the motion to dismiss. Because judgment has been granted in favor of the City on Hess's only federal claim that formed the basis for the City's removal of the case from state court, and the values of convenience, fairness, and comity weigh in favor of remand, the Court will remand the pendent state-law claims for breach of contract over which it had supplemental jurisdiction to state court under 28 U.S.C. § 1367(c)(3). *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348 (1988) (holding that "a district court has discretion to remand a removed case to state court when all federal-law claims have dropped out of the action and only pendent state-law claims remain"); *Pacificare of Okla., Inc. v. Burrage*, 59 F.3d 151, 152-53 (10th Cir. 1995) (holding that the district court had discretion to remand pendent state-law claims to state court after dismissing the federal claim on which it based its removal

jurisdiction); *cf. New Mexico v. Gen. Elec. Co.*, 335 F. Supp. 2d 1157, 1175 (D.N.M.2003) ("[W]here state law claims are removed to federal court, the presence of federal claims . . . provides the basis for supplemental jurisdiction over state law claims which were plainly part of the same controversy. And when the federal claims . . . are dropped from the case, the district court still ha[s] power under 28 U.S.C. § 1367 to exercise supplemental jurisdiction.").

### E. Entry of a final judgment on the § 1983 claim.

Rule 54(b) provides, in part, that, when an action involves multiple claims, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). In determining whether it should enter a final judgment on less than all claims, "[a] district court must first determine that it is dealing with a 'final judgment.'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). The court's disposition must have been a "'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (citation omitted). The Court finds that its grant of summary judgment in favor of the City on Hess's § 1983 claim is a "final judgment" for purposes of Rule 54(b) because it is an ultimate disposition of Hess's cognizable § 1983 claim against the City. And Hess's § 1983 claim against the City is separable from his state-law breach-of-contract claims against the City.

"[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments . . . a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Curtiss-Wright Corp.*, 446 U.S. at 8 (citation omitted). Here, because the state-law breach-of-contract claims are separable

11

and the Court is remanding them to state court for resolution, there is no concern that the Tenth Circuit will have to decide the same issues more than once if the parties subsequently appeal any decisions made by the state court. Thus, entering an individual final judgment on the § 1983 claim will not facilitate piecemeal appeals in this instance and the Court finds no just reason for delaying an appeal on the § 1983 claim. A Rule 54(b) certificate is appropriate for sound judicial administration, and the parties may proceed with the appellate process, if desired.

**IT IS, THEREFORE, ORDERED** that the Defendant's *Motion for Summary Judgment on Qualified Immunity and on Claim for Breach of Contract* [Doc. 19] is GRANTED in part on Hess's § 1983 claim and DENIED in part on Hess's state-law breach-of-contract claims, and that this case is REMANDED to the Ninth Judicial District Court, Curry County, New Mexico.

**IT IS FURTHER ORDERED** that the summary judgment in favor of the City on Hess's § 1983 claims is final and that there is no just reason for delaying entry of a final judgment under FED. R. CIV. P. 54(b) as to this claim.

**SO ORDERED** this 30th day of March, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge